SIRCA et al., Appellees,

v.

MEDINA COUNTY DEPARTMENT OF HUMAN SERVICES et al., Third–
Party Plaintiffs–Appellees; Sirca, Third-Party Defendant–Appellant.

[Cite as *Sirca v. Medina Cty. Dept. of Human Serv.* (2001), 145 Ohio App.3d 182.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 3138–M.

Decided Aug. 8, 2001.

*Dennis Paul, Wadsworth,* for appellees.

*Dean Holman,* Medina County Prosecuting Attorney, for third-party appellees.

*Timothy T. Reid,* for third-party appellees.

*Susan L. Funk,* for appellant John Sirca.

---

BAIRD, Presiding Judge.

Third-party defendant John Sirca ("John") appeals from the decision of the Medina County Court of Common Pleas, which denied his motion for a protective order and ordered him to disclose confidential materials. This court reverses.

In 1980, George and Kathy Sirca ("the Sircas") adopted a son, appellant John Sirca. Shortly after he was born in 1978, John was initially placed in foster care with the Sircas by Medina County Department of Human Services ("DHS"). During his childhood, John allegedly exhibited a number of behavioral problems, requiring ongoing treatment by mental health professionals. On January 21, 1997, shortly after John turned eighteen years old, the Sircas filed suit against DHS in the common pleas court, alleging the tort of wrongful adoption, pursuant to *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101.

The Sircas allege that they advised DHS that they wanted to adopt a healthy baby. The Sircas allege that notwithstanding this fact, DHS fraudulently misrepresented to them John's biological and medical background at the time of the placement. The Sircas claim that they acted in reliance on the misrepresentations, to their detriment. The Sircas allegedly suffered financial damages in paying for mental health treatment for John during the course of his minority. The Sircas contend that John's problems relate to his genetic background, which was known to DHS at the time of the adoption. The Sircas brought suit in their own capacity, and not on behalf of John. John was not a party to the initial complaint.

After discovery began, the Sircas allegedly produced a large amount of John's medical records to DHS, but upon review DHS discovered that clearly some of John's medical records were missing. DHS tried to compel discovery from the Sircas, but the parents did not comply. The Sircas stated that they could not obtain John's signed release for the remaining records. DHS obtained leave to join John as a necessary party and to name him as a third-party defendant. John moved the court to dismiss the complaint against him, pursuant to Civ.R. 12(B)(6). The court denied the motion to dismiss. DHS sought to depose John and several of the Sircas' fact witnesses, mental health professionals who had treated John. John filed a motion for a protective order pursuant to Civ.R. 26(C), but the court denied the motion. The court ordered John and several of his treatment providers to appear for depositions.

It is from this discovery order that John appeals. He assigns one error for our review:

"The trial court's October 25, 2000 judgment entry denying appellant's motion for a protective order and ordering appellant John Sirca to involuntarily produce his medical records and providers for examination is an error and violation of the rights guaranteed appellant under Ohio law."

 Discovery orders such as that here were once deemed not to be final and appealable. See, *e.g., Walters v. The Enrichment Ctr. of Wishing Well, Inc.*

(1997), 78 Ohio St.3d 118, 676 N.E.2d 890, syllabus. However, effective July 22, 1998, changes were made to R.C. 2505.02(B)(4) to provide that discovery orders are final and appealable if they relate to discovery of privileged matter, determine the matter as to the discovery issue, and cannot be meaningfully appealed after final judgment.

The policy of the discovery rules is "to prevent an attorney from taking undue advantage of his adversary's industry or efforts." Civ.R. 26(A)(2). For good cause shown, a party is entitled to a protective order where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Civ.R. 26(C). However, the scope of the right to discovery extends only to relevant material that is not privileged. Civ.R. 26(B)(1).

John argues that the medical records and the medical testimony are not discoverable because they are privileged. John directs our attention to Evid.R. 501, which provides that issues of privilege are governed by statute and by principles of common law as interpreted by Ohio courts. Pursuant to R.C. 2317.02 and 4732.19, the subject materials are confidential because they relate to communications and transactions between John and his treatment providers. John asserts that because these statutes preclude the disclosure of confidential materials (with certain exceptions not relevant here), this material cannot be divulged without John's consent. This court agrees.

R.C. 2317.02 provides that with certain exceptions a physician shall not testify concerning a communication made by the patient to the physician or the physician's advice to the patient. R.C. 2317.02(B)(1). R.C. 4732.19 makes communications between a psychologist and the client confidential, pursuant to R.C. 2317.02. The only relevant exceptions to this rule are situations in which the patient has consented to disclosure and when the patient himself has filed a civil suit. R.C. 2317.02(B)(1)(a)(i) and (iii).

In response, DHS claims that John must have consented to disclose his medical records because the Sircas had in their possession a large volume of documents related to John's treatment history. For this purpose, DHS points to a list of medical records that the Sircas allegedly disclosed to DHS during discovery. However, although DHS sought to supplement the trial court record with this unauthenticated list, this court denied the motion to supplement, as in derogation of App.R. 9. There is nothing in the trial court record to establish what medical records, if any, the Sircas disclosed to DHS. Furthermore, DHS has made no showing that the Sircas obtained any of John's medical records after John turned eighteen. Any materials obtained during John's minority would not require his signed consent. Finally, DHS has offered no evidence to rebut the

possibility that John consented to the release of certain medical records and not others. The right to such a limited consent cannot be disturbed under these circumstances.

 DHS further claims that John's current attorney has stated in court that if the trial proceeds to the damages phase,[1] John would then consent to disclose this confidential material. However, DHS offers no evidence to establish that such a promise was made. Assuming, *arguendo*, that John's counsel made such a conditional promise, this is insufficient to constitute waiver under the circumstances. DHS expresses concern that as the matter proceeds to trial, John will ultimately consent to the disclosure of the confidential material, "ambushing" DHS by the sudden disclosure of information potentially damaging to DHS. This argument is speculative at best.

Ultimately, the Sircas will bear the burden of proving their case by presenting the necessary medical evidence, which John may or may not consent to disclose. If John ultimately consents to its disclosure, DHS will have the opportunity to seek a continuance of the proceedings to engage in further discovery, if necessary. To compel a noncomplaining[2] third party to disclose highly confidential information based on such speculation would simply eviscerate the statutory guarantee.

 Finally, DHS argues that even when a patient does not consent to disclose confidential information, the court may order disclosure under appropriate circumstances. In support of its argument, DHS points to the general proposition enunciated in *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, that confidential material may be disclosed "where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality." *Id.* at paragraph two of the syllabus. DHS invites this court to balance John's right to privacy with a compelling countervailing public interest, namely, the sum of money that DHS stands to lose should the Sircas ultimately prevail. In *Biddle*, the Supreme Court joined the trial court and the appellate court in rejecting the argument that the economic benefit to be obtained in disclosure outweighed the patients' interest in confidentiality. *Id.* at 405–406, 715 N.E.2d at 526–527. Here, too, the mere prospect that DHS could ultimately be

---

1. The Sircas requested and obtained an order from the trial court bifurcating the trial into separate phases to determine liability and damages. The Sircas asserted, and the court agreed, that this would obviate any need to disclose confidential information prematurely.

2. Although DHS joined John as a third-party defendant on the basis that he is a necessary party, the only relief DHS sought relative to John was for the court to compel John to disclose the confidential information. Under R.C. 2317.02(B)(1) and R.C. 4732.19, these confidential materials may not be disclosed because John has neither consented to their disclosure nor filed suit, putting his medical condition at issue.

compelled to pay a large sum to victorious plaintiffs does not outweigh the interest of a third party in retaining the confidentiality of his treatment history.

Because John did not file a lawsuit in which he put his medical history at issue, the trial court erred in compelling John to disclose his confidential medical information absent his voluntary consent.

We find that John's assignment of error is well taken, and we sustain it.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SLABY and WHITMORE, JJ, concur.