DECISION
 I. Third Time, But the Case Still Not Charming {¶ 1} For the third time, this court must rule on a suit brought by Henry L. Hooten against his insurance company, Safe Auto Insurance Company. Specifically, Hooten appeals a grant of summary judgment in Safe Auto's favor. We affirm the trial court's grant of summary judgment on all issues except the contract claim itself, which requires further proceedings in the trial court.
 {¶ 2} On March 3, 1996, Hooten pleaded no contest to a charge of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(3). As part of his sentence, Hooten received a two-year license suspension. Despite the two-year suspension, on November 20, 1996, the court granted Hooten occupational driving privileges, which required that Hooten drive with an ignition-interlock device. An ignition-interlock device connects a breath analyzer to a vehicle's ignition system and monitors the alcohol concentration in the breath of any person attempting to start the vehicle.[1]
 {¶ 3} The court issued Hooten an undated letter to drive that listed as restrictions the ignition-interlock program and the operation of only Hooten's 1982 Buick. Hooten apparently never presented his letter to drive to a registrar or a deputy registrar. As a result, no registrar ever issued Hooten an official restricted license.[2]
 {¶ 4} In early 1997, Hooten bought a 1991 Ford and had the ignition-interlock device transferred to it, apparently under the supervision of the Hamilton County Probation Department. Although Hooten transferred the ignition-interlock device to his newer vehicle, he did not file a request for a modification of his letter to drive to allow for the operation of the 1991 Ford with the device — probably thinking it was not necessary because the change had been made under court supervision.
 {¶ 5} On April 27, 1997, Safe Auto renewed Hooten's automobile insurance policy. On May 23, 1997, Hooten was involved in a traffic accident and reported the accident to Safe Auto. Although Safe Auto admitted that there was a valid automobile insurance policy in effect at the time of Hooten's accident, Safe Auto denied coverage. Safe Auto relied upon an exclusion in the insurance policy that stated, "No coverage is afforded under any section of this policy if the covered auto is being operated by a person without a valid drivers license at the time of the accident."
 {¶ 6} Believing that he did have a valid driver's license at the time of the accident, Hooten sued Safe Auto for its refusal to pay under the insurance policy. Hooten also sued Safe Auto for breaching its duty of good faith and for intentional infliction of emotional distress for its refusal to pay. The trial court granted summary judgment in Safe Auto's favor. The court determined that Hooten's letter to drive allowed him to drive only the 1982 Buick. Because Hooten was driving the 1991 Ford when he had the accident, the court ruled that Hooten was an unlicensed driver at the time of the accident and could not recover under the insurance policy.
 {¶ 7} On appeal to this court, we reversed.[3] We determined from the record that it appeared possible that Hooten did have a valid driver's license at the time of the accident. Given that a court speaks only through its journal entries, we noted that the trial court had not, in either its journal or its order modifying Hooten's suspension, limited Hooten to the operation of a specific vehicle. Thus, according to the court's journal and the November 20, 1996, order, Hooten's only driving restriction at the time of the accident was the usage of a vehicle equipped with an ignition-interlock device. Holding that a genuine issue of material fact remained, we reversed the trial court's grant of summary judgment.
 II. Follow the Bouncing Case {¶ 8} On remand, Hooten's case was assigned to a different trial judge, and then to a third judge. After further discovery, Safe Auto once again moved for and was granted leave to file a summary-judgment motion.
 {¶ 9} Safe Auto filed its second motion for summary judgment. This time, Safe Auto argued that Hooten did not have a valid driver's license at the time of the accident because of a suspension and because he had not paid his reinstatement fee. The abstract from the Bureau of Motor Vehicles indicated that Hooten had not paid the reinstatement fee, required after a suspension,[4] until March 20, 1998.
 {¶ 10} But in his deposition, Hooten claimed that he had paid the reinstatement fee in March 1997 and that the BMV abstract was incorrect. Hooten also stated that he believed he had a valid license on the day of the accident. He said, "What they [the court] told me with the Interlock, that was my license until I got reinstated again. I could drive anywhere. That was a license for me to drive anywhere."
 {¶ 11} The trial court again granted summary judgment in Safe Auto's favor. Its reasoning is not clear from the record. The trial court's entry refers to "reasons stated in this Court's correspondence to all counsel dated July 25, 2001." But that correspondence is not in the record — so we obviously do not know what it said. The court's entry simply granted summary judgment.
 {¶ 12} Hooten again appealed to this court, arguing not only the merits of his case, but that two procedural errors had occurred in the trial court. First, Hooten argued that the trial court had improperly considered Safe Auto's summary-judgment motion when it was filed without leave of court. Second, Hooten argued that the trial court erred in granting Safe Auto's summary-judgment motion without first setting a date for a hearing on the motion or a date of submission.
 {¶ 13} We found Hooten's second procedural argument persuasive. Ruling on only the one issue, we reversed the trial court's grant of summary judgment and held that the trial court was required to set either a date for a hearing or a date of submission before considering the motion for summary judgment.
 {¶ 14} Safe Auto moved to certify a conflict to the Ohio Supreme Court on this issue. We certified the case. The Ohio Supreme Court reversed our decision, holding that a trial court need not notify the parties of the date of consideration of a motion for summary judgment or the deadlines for submitting briefs and Civ.R. 56 materials if a local court rule provides sufficient notice of the hearing date or submission deadlines.[5]
 {¶ 15} The Ohio Supreme Court stated that its reversal on the certified issue did not necessarily require the affirmance of Safe Auto's summary judgment.[6] We are now instructed to consider whether there remains a genuine issue of material fact making summary judgment for Safe Auto inappropriate.[7]
 III. Did Hooten Have a Valid Driver's License? {¶ 16} We review a grant of summary judgment de novo.[8] Safe Auto was entitled to prevail on its summary-judgment motion only if (1) there was no genuine issue of material fact; (2) it was entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of Hooten, and that conclusion was adverse to Hooten.[9]
 {¶ 17} The issue that has most consumed the years spent on this litigation is whether Hooten had a valid driver's license at the time of the accident. Because of his arrest for DUI, Hooten's license was put under an administrative suspension. When Hooten pleaded no contest and was convicted of DUI, the court ordered a two-year suspension of his license.
 {¶ 18} A conviction after a guilty or a no-contest plea entitles the defendant to a termination of the administrative suspension issued because of the DUI arrest.[10] Therefore, when Hooten pleaded no contest to the DUI charge and received the court-ordered suspension, his administrative suspension ended.
 {¶ 19} But the status of the court-ordered suspension at the time of Hooten's accident is not clear. The record includes the following pertinent pieces of information: (1) an undated letter to drive issued by the trial court, which clearly stated that Hooten had limited driving privileges — specifically, the letter to drive stated that he could drive his 1982 Buick with an interlock device attached; (2) a journal entry dated November 13, 1996, stating "Guardian Interlock or Life Safer available"; (3) an "Order to Modify," dated November 20, 1996, signed by the trial court, stating "ignition interlock required until 3-3-98"; (4) a journal entry dated November 20, 1996, stating "G.I granted"; (5) a form titled "Lifesafer Ignition Interlock Order for Modification of Addendum to Probation Order," which indicated that the interlock device had been removed from Hooten's 1982 Buick and installed on a 1991 Ford — Hooten signed and dated the form on March 26, 1997, as did the Ohio Interlock Representative, but the line titled "Court Officer's Signature" was blank; and (6) a BMV abstract, which showed an administrative license suspension from March 3, 1996, until March 3, 1997, and a court-ordered suspension from March 3, 1996, until March 3, 1998, but also indicated that "due to court modification," effective December 9, 1996, an ignition interlock was required. Additionally, the abstract indicated that a reinstatement fee was paid on March 20, 1998.
 {¶ 20} It is clear that Hooten believed that, at the time of the accident, his license was no longer under suspension. If his belief was wrong, he seemed to have been misled by the court. In Hooten's deposition, Safe Auto asked, "Do you remember anyone telling you that you needed to take either that letter to drive or this Ignition Interlock permission paper over to the Ohio Bureau of Motor Vehicles?" Hooten answered, "They [the court] told me, just keep it in the car while you're driving. Keep it with you. Anything happens, that paper will take care of it." And when Safe Auto asked Hooten if he understood the exclusion in his insurance policy for a person driving without a valid driver's license, Hooten responded, "Well, I know if you don't have your license, you ain't supposed to be driving or nothing. Why would they tell me my license and everything was good as long as I had the Breathalyzer and the paper to drive on?"
 {¶ 21} Safe Auto claims that, regardless of the status of the court-ordered suspension, the BMV abstract proved that Hooten had not paid his reinstatement fee at the time of the accident. And under Ohio law, no person whose driver's license has been suspended shall operate any motor vehicle within the state until he or she has paid the license reinstatement fee required under R.C. 4511.19.1(L).[11] This is surely a technical issue at best. If anyone who has not paid some administrative fee is not insured, then there are thousands of people driving around unknowingly uninsured.
 {¶ 22} But it is not even clear to us what the BMV abstract proved. It listed the suspensions, yet it also listed the court-ordered modification. It was a mere listing of occurrences, not a definitive statement about the validity of Hooten's license.
 {¶ 23} To add to the confusion, Hooten, in his deposition, claimed that he had paid the reinstatement fee in March 1997, which would have been before the accident. When told that the BMV abstract indicated that he had paid the reinstatement fee in March 1998, Hooten responded that that was wrong. He also specifically remembered that he had paid the fee before the accident. But Hooten was perhaps confused himself, because at another point in the deposition he stated that he had paid the reinstatement fee after the accident.
 {¶ 24} The only conclusion we can reach on this point is that the record is inconclusive. To uphold a summary judgment, we must view the evidence in Hooten's favor and determine that there is no genuine issue of material fact. We cannot say that the factual question of whether Hooten had a valid driver's license, or whether he had paid the reinstatement fee at the time of the accident, is clear from the record.
 {¶ 25} Therefore, we hold that genuine issues of material fact remain and that summary judgment for Safe Auto was inappropriate. We reverse the grant of summary judgment on Hooten's breach-of-contract claim and remand this case for further proceedings. We believe that the case cannot be decided by summary judgment at this point. The trial court should determine the factual issues of (1) whether the court-ordered letter to drive alone gave Hooten the authority to legally drive his vehicle; and (2) whether Hooten had paid his reinstatement fee at the time of the accident.
 {¶ 26} The legal issues that will arise depending on the facts adduced are (1) whether the technical defect of not paying a reinstatement fee would be sufficient to deny coverage; (2) whether public policy would accept that result, considering that innocent victims of such a driver would be hurt; and (3) whether Safe Auto, by accepting Hooten's premium with possible constructive knowledge of the status of his license, had waived this exclusion. Or maybe the case should just be settled.
 IV. Bad Faith and Punitive Damages {¶ 27} In Hooten's complaint, he alleged not only that Safe Auto had improperly denied his claim, but also that Safe Auto's refusal to pay breached its duty of good faith and was an intentional infliction of emotional distress. Hooten demanded both compensatory and punitive damages.
 {¶ 28} The independent tort of bad faith arises when an insurer refuses to pay a claim without "reasonable justification" for the denial.[12] If Hooten's driver's license was not valid at the time of the accident, Safe Auto was perhaps justified in refusing his claim. Because of the confusion surrounding the issue of whether Hooten's driver's license was valid, we determine that Safe Auto's refusal to pay the claim was at least supported by a reasonable argument. There is nothing in the record to indicate that Safe Auto acted in bad faith or intended to cause Hooten emotional distress.
 {¶ 29} Therefore, we affirm that part of the trial court's entry of summary judgment that dismissed Hooten's bad-faith claim, his claim for intentional infliction of emotional distress, and his claim for punitive damages. But we reverse the summary judgment entered on his contract claim and remand this case for further proceedings in accordance with the terms of this decision.
Judgment affirmed in part reversed in part, and cause remanded.
Gorman, J., concurs.
Sundermann, J., dissents.
[1] R.C. 4511.83(A)(1).
[2] R.C. 4507.16(L)(2).
[3] See Hooten v. Safe Auto Ins. Co. (May 19, 2000), 1st Dist. No. C-990684.
[4] R.C. 4507.02(C).
[5] See Hooten v. Safe Auto Ins. Co., 100 Ohio St.3d 8,2003-Ohio-4829, 795 N.E.2d 648.
[6] Id. at ¶ 43.
[7] Id.
[8] See Doe v. Shaffer, 90 Ohio St.3d 388, 390,2000-Ohio-186, 738 N.E.2d 1243.
[9] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[10] See State v. Gustafson, 76 Ohio St.3d 425, 441,1996-Ohio-425, 668 N.E.2d 435; State v. Uskert,85 Ohio St.3d 593, 596, 1999-Ohio-289, 709 N.E.2d 1200.
[11] R.C. 4507.02(C).
[12] See Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552,1994-Ohio-461, 644 N.E.2d 397, paragraph one of the syllabus.